UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
GRADIAN H. GRAHAM,

Plaintiff.

      -against-

THE CITY OF NEW YORK and POLICE
OFFICER FAYAZ KHAN (Patrol Borough South,
Tax Reg # 952928), SERGEANT KENGMING
CHANG (Patrol Borough South), and Officers John
Doe, Individually and in their Official Capacities,

Defendants.

-------------------------------------------------------------x

**FIRST AMENDED
COMPLAINT AND
DEMAND FOR JURY
TRIAL**

**14 CV 3880 (MKB)(SMG)**

Plaintiff, GRADIAN H. GRAHAM, by and through his attorneys, **Fisher, Byrialsen & Kreizer PLLC,** complaining of the defendants herein, respectfully shows the Court and alleges:

### PRELIMINARY STATEMENT

1.     This is a civil rights action in which the Plaintiff, Gradian H. Graham, seeks relief for defendants' violations, under color of state law, of his rights, privileges and immunities secured by the 42 U.S.C. §§ 1981, 1983, 1985, 1988; and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

2.     Defendants, the City of New York and New York City Police Officers Fayaz Khan (Patrol Borough South, Tax Reg # 952928), Sergeant Kengming Chan (Patrol Borough South), and Officers John Doe, individually and, as the case may be, in their official capacities, jointly and severally, did cause Plaintiff Gradian H. Graham to be subject to, *inter alia*, an

1

unreasonable stop, detainment, and search and excessive and unreasonable force causing his loss of liberty and physical and mental injury.

3.      Plaintiff seeks (i) compensatory damages for physical injury, psychological and emotional distress, and other financial loss caused by the illegal actions of the defendants; (ii) punitive damages to deter such intentional or reckless deviations from well-settled constitutional laws; and (iii) such other and further relief, including costs and attorneys fees, as this court deems equitable and just.

## JURISDICTION

4.      This action is brought pursuant to 42 U.S.C. §§ 1981, 1983, 1985 and 1988, and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

5.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(3) and (4), as this action seeks redress for the violation of Plaintiff's constitutional and civil rights.

## VENUE

6.      Venue is properly laid in the United States District Court for the Southern District of New York under 28 U.S.C. § 1391(b)(2), this being the District in which the claims arose.

## TRIAL BY JURY

7.      Plaintiff demands a trial by jury on each and every one of his claims as pled herein pursuant to Fed., R. Civ. P. 38(b).

2

## PARTIES

8.     At all times relevant hereto Plaintiff was and is a resident of New York, New York.

9.     At all times relevant hereto defendant THE CITY OF NEW YORK (hereinafter, "NYC") was and is a municipality of the State of New York and owns, operates, manages, directs, and controls the New York City Police Department, which employs the other named Defendants.

10.     At all times relevant to this action, Defendants Police Officer Fayaz Khan (Patrol Borough South, Tax Reg # 952928), Sergeant Kengming Chan (Patrol Borough South), and Officers John Doe, are and were police officers employed by the New York City Police Department (hereinafter, "NYPD"), and acting under color of state law.  They are being sued in both their individual and official capacities.

11.     At all times relevant hereto and in all their actions described herein, the Defendants Officer Fayaz Khan (Patrol Borough South,Tax Reg # 952928), Sergeant Kengming Chan (Patrol Borough South) and Officers John Doe, were acting under color of statutes, ordinances, regulations, policies, customs, and usages of the NYPD and NYC, pursuant to their authority as employees, servants, and agents of the NYPD within the scope of employment and incidental to their otherwise lawful duties and functions as employees, servants, agents and police officers.

12.     NYC was responsible for the hiring, training, supervision, discipline, retention and promotion of the police officers, sergeants and/or employees of the NYPD.  They are being sued both in their individual and official capacities.

3

## **FACTS**

13.     On September 10, 2013 at approximately 4:35 p.m., Plaintiff Gradian H. Graham, an African American male and member of a minority class, was driving near or around the NE Intersection of Guy R. Brewer Boulevard and Archer Avenue near 165th Street in the County of Queens, State of New York.

14.     At the time of and prior to his arrest, Plaintiff was in the vehicle with his wife, Jodian Graham; children, Jordayne Graham, 3 years old, and Jaylen Graham, 2 years old; and his brother-in-law visiting from Jamaica, Jason Julye, 17 years old.

15.     At the time of and prior to his arrest, Plaintiff was driving to York College, where his wife was enrolled as a student, to pay her college fall semester tuition. After, Plaintiff intended to drive the vehicle to his 2 year old son's pediatrician for a scheduled doctors appointment because his son had a high fever and cold.

16.     At the time of and prior to his arrest, Plaintiff was traveling northbound on Archer Avenue and observed a patrol vehicle ahead traveling southbound in the opposite direction. After the patrol vehicle passed Plaintiff's vehicle, Plaintiff observed the patrol vehicle make a u-turn so that it began traveling northbound behind Plaintiff.  As Plaintiff made a right turn onto 165th Street, toward York College, the patrol vehicle also made a right turn, pulled behind Plaintiff's vehicle, and the officers turned on the sirens. Plaintiff promptly pulled over his vehicle.

17.     At the time of and prior to his arrest, Plaintiff had not engaged in any illegal or suspicious activities.

4

18.     At the time of and prior to his arrest, two police officers were inside said patrol vehicle. One of the officers approached Plaintiff's vehicle and asked him for his license and registration.

19.     During this time, the other officer peered into all of the windows of the vehicle, and walked around the perimeter of the car.

20.     While in possession of Plaintiff's license and registration, one of the officers told Plaintiff that he was stopped because items were blocking the front windshield.

21.     The objects referred to were hanging from the rear-view mirror.

22.     At the time of and prior to his arrest, as Plaintiff opened the hand-rest compartment to retrieve his insurance card and registration information, Defendant Officer also indicated that he observed a knife inside the hand-rest compartment of Plaintiff's vehicle. Plaintiff admitted to the Defendant Officer that said knife was used during his lunch breaks at work to peel fruit. Said knife had a latch that had to be undone before the blade could be opened.

23.     Then, Plaintiff was instructed to exit the vehicle and place his hands on the trunk of the vehicle.

24.     Defendant Officers kicked Plaintiff's feet apart and searched him, removing his wallet, car keys, US currency, and employment security license from his person.

25.     Plaintiff did not resist the Defendant Officers' efforts to search or arrest him in any way.

26.     Without provocation, one of the officers grabbed Plaintiff's hands, twisted them behind his back to hand-cuff him, and slammed Plaintiff's body into the trunk of the car twice with such force that it caused Plaintiff's rib to be fractured, disc herniation, and lower back pain.

27.     While this officer assaulted Plaintiff, the other officer was present and failed to intervene.

28.     While Plaintiff was being assaulted, Plaintiff's wife told both officers that her husband had never been in trouble with the law and had no criminal record.  In response, one of the officers stated, in Plaintiff's presence, that he "couldn't see a black man without a clean record."

29.     At the time of and after his arrest, additional NYPD officers arrived on the scene and assisted the two original officers in placing Plaintiff into the patrol vehicle.

30.     At the time of and after his arrest, and in Plaintiff's presence, Plaintiff's wife, infant children, and brother-in-law were told by one of the original officers to exit the vehicle and stand on the side of the road. Plaintiff's vehicle was driven away by one of the officers because neither Plaintiff's wife or brother-in-law had a driver's license.

31.     At the time of and during his arrest, and in Plaintiff's presence, Plaintiff's wife asked one of the officers for an ambulance to take her ill infant son to a Hospital.  One of the officers responded "find a way to get home on your own." Another officer thereafter told Plaintiff's wife that someone from the NYPD would provide the family with transportation to the police precinct. All officers then left the scene, leaving Plaintiff's family behind.  However, no one from the NYPD arrived to transport the family. The family waited nearly five hours on the side of the road before a family friend could pick them up and bring them to the precinct.

32.     At the time of and after his arrest, Plaintiff was taken to the 103RD precinct.

33.     At the 103RD precinct, Plaintiff told certain an officer that he was in pain and asked for his hand-cuffs to be loosened. Said officer responded by making the hand-cuffs tighter, causing excruciating pain.

34.     Other officers observed Plaintiff's hand-cuffs being tightened, and failed to intervene.

35.     Thereafter, Plaintiff was brought to Central Booking in the late evening of September 10, 2013.

36.     Plaintiff notified numerous personnel while at Central Booking of excruciating pain in his abdomen, back, and rib cage area, however, Plaintiff was not given medical treatment.

37.     Plaintiff was not arraigned until after 12:01 am on September 12, 201 on docket number 2013QN050789 with PL 205.30 Resisting Arrest, PL 265.01-1 Criminal Possession of a Weapon in the Fourth Degree, and VTL 375-30, Equipment Obstructing Driver's View.

38.     At arraignment, Plaintiff accepted an adjournment in contemplation of dismissal and the charges against her were subsequently dismissed and sealed.

39.     Plaintiff had never been arrested or been charged with a crime prior to this incident.

40.     On the same day as Plaintiff's release, Plaintiff was admitted into the Emergency Room of St. John's Episcopal Hospital located on 327 Beach 19th Street, Rockaway, New York 11692 and was diagnosed with and treated for a rib fracture, neck sprain, and severe back pain.

41.     As a result of the assault on Plaintiff, he was forced to seek extensive follow-up treatment and physical therapy for his fracture and severe pain at numerous medical facilities, clinics, and diagnostic centers.

42.     As a result of the assault on Plaintiff, he was forced to seek psychological treatment.

7

43.	As a result of the assault on Plaintiff, he continues rely on the assistance of a cane when his lower back pain is exasperated and continues to receive regular injections in his lower back to relieve the pain and pressure to this day.

44.	As a result of the assault on Plaintiff, he continues to suffer from embarrassment, humiliation, and emotional, mental, and psychological pain and suffering.

45.	As a result of the assault on Plaintiff, he lost significant time from work as a result of the incident and suffered financial losses. Plaintiff was on unpaid medical sick leave from September 10, 2013 to March 31, 2014. Plaintiff was ultimately terminated from his job on March 31, 2014 because he was unable to work due to his serious injuries.

46.	NYC, as the municipal entity that oversees the NYPD, has the authority to promulgate, approve, enforce, and oversee protocols, directive, and guidelines for officers regarding vehicular stops, arrests and charging suspects.

47.	NYC, as the municipal entity that oversees the NYPD, has the authority to supervise or delegate supervision over the hiring and training of officers responsible for knowing the rules and regulations promulgated in official protocols, directives, and guidelines including the official NYPD Patrol Guide regarding vehicle stops, arrests and charging suspects.

48.	NYC, as the municipal entity that oversees the NYPD, has worked directly with commanders, sergeants, and supervisors of the NYPD to create a pattern of practice of conducting vehicular stops in areas heavily populated by racial minorities and/or known to be "high crime" areas.

49.	This action is commenced within three years of the occurrence herein.

8

**FIRST CLAIM FOR RELIEF:**
**DEPRIVATION OF FEDERAL CIVIL RIGHTS**
**(General Allegations, Fourth, Fifth and Fourteenth Amendments)**

50.     Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

51.     All of the aforementioned acts of Defendants, their agents, servants, and employees were carried out under color of state law.

52.     All of the aforementioned acts deprived Plaintiff of the rights, privileges, and immunities guaranteed citizens of the United States by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, including, but not limited to:

a. the right to be free from unreasonable searches of his person,

b. the right to be free from unreasonable seizure of his person, including excessive force,

c. the right to be free from arrest without probable cause,

d. the right to be free from wrongful detention without good faith, reasonable suspicion or legal justification, and of which detention, Plaintiff was aware and to which she did not consent.

e. the right to be free from the lodging of false charges against his by police officers,

f. the right to be free from abuse of process,

g. the right to be free from deprivation of liberty without due process of law, and

h. the right to equal protection, privileges and immunities under the laws.

53.     All of the aforementioned acts were carried out in violation of 42 U.S.C. § 1983.

54.     The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

55.     The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and rules of NYC and the NYPD, all under the supervision of ranking officers of said department.

56.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a custom, usage, practice, procedure, or rule of his/her respective municipality/authority, which is forbidden by the Constitution of the United States.

57.     By these actions, these Defendants have deprived Plaintiff of rights secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983, for which the Defendants are individually and jointly liable.

## SECOND CLAIM FOR RELIEF:
## EXCESSIVE FORCE UNDER 42 U.S.C. § 1983

58.     Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

59.     The degree of force used by Defendants was excessive, unreasonable, and unwarranted.

60.     Defendants' actions were intentional, willful, malicious, egregious, grossly reckless and negligent, unconscionable, and unprovoked.  Plaintiff was not resisting arrest or being handcuffed in any way.

61.     As a result of the excessive force and brutality, Plaintiff sustained multiple injuries to his wrists and body and endured serious emotional and psychological distress. Plaintiff sustained injuries including, but not limited to, a fractured rib, disc herniation, and severe and permanent lower back pain.

10

62.     All of the aforementioned acts of the Defendants constituted excessive force under the laws of the United States Constitution and the Defendants are liable for said damage.

**THIRD CLAIM FOR RELIEF:**
**FAILURE TO INTERVENE**
**UNDER FOURTH AMENDMENT – 42 U.S.C. § 1983**

63.     Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

64.     Members of the NYPD have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians and to intervene where they observe another member of the police department employing unjustified and excessive force against a civilian or falsely arresting a civilian.

65.     The defendant officers were present on NE Intersection of Guy R. Brewer Boulevard and Archer Avenue near 165th Street in the County of Queens, State of New York and in the vicinity of Plaintiff's arrest and witnessed other officers, *inter alia*, use unlawful force against plaintiff, including grabbing Plaintiff's hands, twisting them behind his back to hand-cuff him, and slamming the side of Plaintiff's body into the trunk of the car with such force that it caused Plaintiff's rib to be fractured, disc herniation, and lower back pain.

66.     The assault on Plaintiff's person was clearly excessive, unreasonable, unwarranted, and made without any other legal justification, yet defendants failed to take any action or make any effort to intervene, halt or protect Plaintiff from the excessive force.

67.     Defendants' violated Plaintiff's constitutional rights by failing to intervene in the Defendant Officers' clearly unconstitutional use of force that resulted in injury and damages.

## FOURTH CLAIM FOR RELIEF:
## <u>MUNICIPAL LIABILITY</u>

68.     Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

69.     The acts complained of herein were carried out by the Defendant officers in their capacities as police officers, employees and officials pursuant to the customs, policies, usages, practices, procedures, and rules of NYC and the NYPD, all under the supervision of ranking officers of said departments.

70.     Prior to September 10, 2013, NYC and NYPD developed and maintained policies or customs exhibiting deliberate indifference to the Constitutional rights of persons in NYC, which caused the violation of Plaintiff's rights.

71.     It was the policy and/or custom of NYC and NYPD to inadequately and improperly train and supervise its police officers, including the defendant officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers.

72.     It was the policy and/or custom of NYC and NYPD to inadequately and improperly investigate complaints of misconduct against police officers filed by persons in police custody, and acts of misconduct were instead tolerated by NYC, including, but not limited to the following incidents: assault and battery, harassment, negligence, intentional infliction of emotional distress and deliberate indifference to medical needs.

73.     The foregoing customs, policies, usages, practices, procedures, and rule of NYC and the NYPD constituted deliberate indifference to the safety, well-being, and constitutional rights of Plaintiff.

74.     The foregoing customs, policies, usages, practices, procedures, and rule of NYC and the NYPD were the proximate cause of the constitutional violations suffered by Plaintiff as alleged herein.

75.     The foregoing customs, policies, usages, practices, procedures, and rule of NYC and the NYPD were the moving force behind the constitutional violations suffered by Plaintiff as alleged herein.

76.     As a result of the above described policies and customs, police officers of NYPD, including the defendant officers, believed that their actions would not be monitored by supervisory officers and that their own misconduct would not be investigated or sanctioned, but instead would be tolerated.

77.     Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of Plaintiff.

78.     Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate officers and were directly responsible for the violation of Plaintiff's constitutional rights.

79.     Defendants NYC, as municipal policymakers in the training and supervision of Defendant police officers/employees, have pursued a policy and custom of deliberate indifference to the rights of persons in their domain who suffer violations of their freedom from deprivation of Liberty without Due process of law in violation of the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983, and the Constitution and laws of the State of New York.

80.     All of the foregoing acts by Defendants deprived Plaintiff of federally protected rights, including, but not limited to, the right:

13

a.  Not to be deprived of liberty without due process of law;

b.  To be free from unreasonable search and seizure under the Fourth and Fourteenth Amendments to the United States Constitution;

c.  To be protected against violations of his civil and constitutional rights;

d.  Not to have cruel and unusual punishment imposed upon him; and

e.  To receive equal protection under the law.

**FIFTH CLAIM FOR RELIEF:**
**CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS**
**UNDER 42 U.S.C. § 1983, 1985, 1986**

81.   Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

82.   All the defendants, acting with each other individually and on behalf of and under the auspices and control of the City, and under color of law, conspired to injure Plaintiff in his person and property and deprive Plaintiff of his First, Fourth, Fifth, Eighth and Fourteenth Amendment rights.  The defendants jointly caused such deprivation of rights by acting in concert to disseminate false information concerning the Plaintiff and by disseminating false information that lacked any reasonable basis or probable cause to support it that the Plaintiff committed a crime, and/or to charge him with a crime, and/or to arrest him.

83.   The defendants further deprived the Plaintiff of his due process rights specifically by conspiring to and assisting in the arrest of the Plaintiff without probable cause and participating in the prosecution of plaintiff; by denying the Plaintiff his First, Fourth, Fifth, Eighth and Fourteenth Amendment rights via a conspiracy to deprive the plaintiff of his liberty and taking his property without due process and compensation; conspiring together to cover up

14

the misconduct they committed; and preventing the Plaintiff from being compensated for his wrongful arrest, for the loss of his constitutional rights, the loss of his job and for the emotional harm he suffered.

84.      The aforesaid actions by the defendant police officers were done pursuant to an official municipal policy or custom of the city and state, which policy involved the indiscriminate detention, interrogation, intimidation, denial of medical attention, and prosecution of individuals who were not engaged in criminal conduct, and for the purpose of thwarting the fair administration of justice.

85.      The defendants' failure to stop these wrongful acts and actions constitutes a breach of their duty to do so under 42 U.S.C. § 1986.

86.      The defendants knew or should have known that the misconduct and false and fabricated accusations and/or charges against plaintiff were violative of his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights to due process and equal protection, and were tantamount to unequal protection under the law, in violation of the Plaintiff's fundamental rights under the Constitution.

87.      Said defendants had the power to prevent the continued due process violations against the plaintiff, yet had failed to prevent the dissemination of false information and/or to dismiss the fabricated accusations and charges against plaintiff, and/or to protect the plaintiff from the unwarranted and potential harm and penalties of said charges.

88.      Defendants herein, their agents, servants and employees, motivated in part by racial and/or ethnic animus, conspired to deprive Plaintiff of his federal civil and constitutional rights, in violation of 42 U.S.C. § 1985.

89.    All of the aforementioned acts of Defendants constituted a violation of Plaintiff's civil rights provided to him under the United States Constitution and 42 U.S.C. § 1983, 1985, and 1986.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and prays for the following relief, jointly and severally, against the Defendants:

1.  Special and compensatory damages in the amount of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) DOLLARS; and

2.  Punitive damages in the amount of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) DOLLARS; and

3.  Reasonable attorney's fees and costs; and

4.  Such other and further relief as this Court deems just and proper.

DATED:      New York, New York
            October 1, 2014

Respectfully submitted,

Kaitlin F. Nares, Esq. (KN2953)
FISHER, BYRIALSEN & KREIZER PLLC
*Attorney for Plaintiff*
291 Broadway, Suite 709
New York, New York 10007
(212) 962-0848

16